IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**CLARENCE COCROFT and TRU SOURCE**
**MEDICAL CANNABIS, LLC**                                                            **PLAINTIFFS**

**VS.**                                                                                           **CASE NO. 3:23-cv-431-MPM-JMV**

**CHRIS GRAHAM, in his official capacity**
**as the Commissioner of the Mississippi Department**
**of Revenue, et al.**                                                             **DEFENDANTS**

**DEFENDANTS' MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

## INTRODUCTION

This Court should dismiss Plaintiffs' complaint, which seeks to halt the State's enforcement of advertising restrictions against cannabis dispensaries licensed pursuant to Mississippi's Medical Cannabis Act. To begin with, Plaintiffs fail to state an actionable claim under the First Amendment. Under the *Central Hudson* test for commercial speech, the regulation at issue must restrict speech that concerns "lawful activity" in order for a plaintiff to state a valid First Amendment claim. Cannabis advertising is not speech that concerns lawful activity. Cannabis is a Schedule I controlled substance. And it is still a crime under federal law to manufacture, distribute, dispense, or possess cannabis. Plaintiffs thus fail to state a claim upon which relief can be granted. In the alternative, this Court should dismiss this case because Plaintiffs are asking this Court to use its equitable powers to facilitate criminal activity under federal law. Under well-established principles of equity, federal courts may not do that. For either of these reasons, dismissal is warranted.

## STATEMENT OF FACTS

**Factual Background.** The Mississippi Legislature passed the Mississippi Medical Cannabis Act (the "Act") in 2022. *See* Miss. Code Ann. § 41-137-1, *et seq.* The Act authorized the production, sale, and use of cannabis for medicinal purposes. *See* Miss. Code Ann. § 41-137-5. The Mississippi Department of Health ("MDOH") has "ultimate authority for oversight of the administration of the medical cannabis program," but is specifically charged with, among other things, licensing and regulating facilities and entities responsible for growing, processing, transporting, testing, and disposing of medical cannabis. Miss. Code Ann. § 41-137-7(1), (3)(a)-(b); *see* Miss. Code Ann. § 41-137-35(1). On the other hand, the Mississippi Department of Revenue ("MDOR") has been assigned the duty of "licensing, inspection and oversight of medical cannabis dispensaries." Miss. Code Ann. § 41-137-7(4); *see* Miss. Code Ann. § 41-137-35(1).

The Act requires both MDOH and MDOR to promulgate certain rules and regulations "where relevant to the role" of each agency in administering the medical cannabis program. Miss. Code Ann. § 41-137-41(1). The Act specifically mandates the issuance of rules and regulations which provide "[r]estrictions on the advertising, signage, and display of medical cannabis[.]" Miss. Code Ann. § 41-137-41(1)(d)(x). But the Act does not prohibit all forms of marketing and branding. To the contrary, the rules and regulations adopted under the statute "may not prevent appropriate signs on the property of a dispensary, listings in business directories, including phone books, [or] listings in cannabis-related or medical publications[.]" *Id*. Nor may the regulations prohibit medical cannabis dispensaries (and other licensed entities) from displaying cannabis in their "company logos and other branding activities," operating a website with pictures of the products they sell, or sponsoring "health or not-for-profit charity or advocacy events[.]" *Id.*

MDOH has adopted regulations governing the advertising and marketing of medical cannabis. *See* 15 Miss. Admin. Code Pt. 22, Subpt. 3, R. 3.1.1, *et seq*. The regulations prohibit all medical cannabis licensees, including dispensaries, from "advertising and marketing in any media[.]" 15 Miss. Admin. Code Pt. 22, Subpt. 3, R. 3.2.1. This prohibition applies to all forms of broadcast, electronic, and print media. *Id.* It also applies to "[m]ass text/messaging communications," "[m]ass email communications," and advertising "in any manner that can be viewable . . . [in] a public space[.]" *Id.* Last, MDOH's advertising and marketing regulations bar licensees from displaying their products in windows or places open to public view, as well as soliciting reviews, testimonies, or endorsements from patients, caregivers, and healthcare practitioners. *Id.*

The regulations do however permit dispensaries and other licensees to "participate in branding activities . . . in order to publicize their businesses[.]" 15 Miss. Admin. Code Pt. 22, Subpt. 3, R. 3.3.1. More specifically, dispensaries are allowed to create "a website and/or social media presence that provides" their "contact information, retail dispensing locations, and a list of products available"; to be listed in phone books and "cannabis-related or medical publications"; and to sponsor "health or not-for-profit charity or advocacy events." 15 Miss. Admin. Code Pt. 22, Subpt. 3, R. 3.3.2. The regulations further allow "[b]randing" through the use of on-site "business signage" but make clear that such branding is "subject to local zoning and permitting requirements." 15 Miss. Admin. Code Pt. 22, Subpt. 3, R. 3.3.4.

As discussed above, MDOH does not license or regulate medical cannabis dispensaries. That duty has been assigned to MDOR. To that end, MDOR has adopted a regulation which requires all licensed dispensaries to comply with MDOH's advertising and marketing regulations. *See* 35 Miss. Admin. Code Pt. XI, R. 12. Dispensaries who violate the advertising and marketing

3

regulations may be subject to disciplinary action by MDOR. *See* 35 Miss. Admin. Code Pt. XI, R. 28.

**Plaintiffs' Complaint.** On November 13, 2023, Plaintiffs Clarence Cocroft and Tru Source Medical Cannabis, LLC ("Tru Source") filed their *Complaint for Declaratory and Injunctive Relief* against MDOR Commissioner Christopher Graham, Chief of Enforcement of MDOR's Alcohol Beverage Control Bureau of Enforcement Pat Daily,[1] and the State Health Officer for MDOH Dr. Daniel Edney, in their official capacities. Doc. 1. Tru Source is a medical cannabis dispensary licensed by MDOR and located in Olive Branch, Mississippi. *Id.* at 2, ¶ 3. Cocroft is the owner of Tru Source. *Id.* at 2, ¶ 2.

Plaintiffs allege that, because Tru Source is located in an industrial park, it is difficult to attract medical cannabis patients without advertising or marketing its business. *See id*. at 19, ¶¶ 129-132. According to Plaintiffs, the Act and MDOH's advertising and marketing regulations promulgated thereunder prevent Tru Source from being "able to advertise like any other state-legal business," and therefore "severely hamper[]" Tru Source's "ability to reach new potential customers." *Id.* at 20-21, ¶¶ 138, 144. Plaintiffs claim that, in the absence of the State's alleged "Ban" on medical cannabis advertising, they "would place signage on major roads near the dispensary to provide directions" and "advertise Tru Source" on "billboards" owned by Cocroft. *Id.* at 20, ¶¶ 135, 141. They also allege that they would advertise their business in other ways, including through television, radio, social media, podcasts, and direct mailing. *Id.* at 22-23, ¶¶ 156-160.

---

[1] Riley Nelson replaced Pat Daily as Chief of Enforcement of the Alcohol Beverage Control Bureau of Enforcement on November 1, 2023. Pursuant to Fed. R. Civ. P. 25(d), Chief Nelson is automatically substituted as an official-capacity defendant in place of Chief Daily.

In their complaint, Plaintiffs only assert one cause of action. *Id.* at 25-26, ¶¶ 183-197. They assert that the State's "Ban" on medical cannabis advertising is unconstitutional under the First Amendment to the United States Constitution because it prohibits "truthful and non-misleading speech about a legal product." *Id.* at 25, ¶¶ 184, 187. According to Plaintiffs, the so-called "Ban" consists of the provision in the Act regarding restrictions on advertising, Miss. Code Ann. § 41-137-41(1)(d)(x), and MDOH's advertising and marketing regulations for medical cannabis establishments, 15 Miss. Admin. Code Pt. 22, Subpt. 3, R. 3.3.1, *et seq. See* Doc. 1 at 7, ¶ 32. Plaintiffs seek a declaratory judgment "that, facially and as applied to" them and "all those similarly situated," the "Ban violates the First Amendment." *Id.* at 27, ¶ A. They also request that this Court issue a permanent injunction prohibiting the enforcement of the "Ban" by Defendants and their agents. *Id.* at 27, ¶ B.

## STANDARD OF REVIEW

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Moreover, if "a successful affirmative defense appears clearly on the face of the pleadings," a court can adjudicate that defense on a motion to dismiss under Rule 12(b)(6). *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). Illegality is an affirmative defense that may be considered on a motion to dismiss. *See* Wright & Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2020).

5

**ARGUMENT**

I. **PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER THE FIRST AMENDMENT BECAUSE THE CHALLENGED ADVERTISING RESTRICTIONS DO NOT APPLY TO SPEECH CONCERNING LAWFUL ACTIVITY.**

Plaintiffs contend that the State's so-called "Ban" on medical cannabis advertising and marketing violates the First Amendment because it "prohibits truthful and non-misleading speech about a legal product." Doc. 1 at 25, ¶ 187. Plaintiffs are wrong. Although medical cannabis is legal under Mississippi law, it remains illegal under federal law. In order for commercial speech to be protected by the First Amendment, it must relate to an activity that is legal under federal law. Because medical cannabis advertising and marketing do not relate to an activity that is legal under federal law, Plaintiffs' complaint should be dismissed for failure to state a claim.

It is indisputable that the proposed advertising that Plaintiffs wish to engage in falls squarely within the Supreme Court's definition of commercial speech because it would do "no more than propose a commercial transaction." *Virginia Pharmacy Board v. Virginia Citizens Consumer Council*, 425 U.S. 748, 762 (1976). Commercial speech is only entitled to limited protection under the First Amendment because of its "subordinate position in the scale of First Amendment values." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978).

The four-part test articulated in *Central Hudson Gas & Electricity Corporation v. Public Service Commission of New York*, 447 U.S. 557 (1980), applies to commercial speech. *E.g.*, *Am. Acad. of Implant Dentistry v. Parker*, 860 F.3d 300, 306 (5th Cir. 2017). The first part of the test requires a court to determine "whether the expression is protected by the First Amendment." *Parker*, 860 F.3d at 306 (quoting *Central Hudson*, 447 U.S. at 566. To be protected by the First Amendment, "commercial speech . . . must concern lawful activity and not be misleading." *Id.* If the commercial speech at issue relates to a lawful activity and is not misleading, the court

"asks whether the asserted governmental interest is substantial." *Id.* If the asserted interest is substantial, the court then "must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." *Id.* Plaintiffs' First Amendment claim fails the first requirement of the *Central Hudson* test. The proposed medical cannabis advertising Plaintiffs intend to undertake does not concern a lawful activity.

Cannabis (i.e., marijuana) is classified as a Schedule I controlled substance. 21 U.S.C. §§ 802(6), 812 (Schedule I)(c)(10). Under the Controlled Substances Act, it is a crime to manufacture, distribute, dispense, or possess any controlled substance, including cannabis. 21 U.S.C. §§ 841(a)(1), 844(a). Moreover, the Controlled Substances Act criminalizes the advertising of cannabis or any other Schedule I drug. 21 U.S.C.A. § 843(c)(1) (prohibiting advertising that "attempt[s] to propose or facilitate an actual transaction in a Schedule I controlled substance"); *see id.* at (c)(2)(A) (prohibiting internet advertising) & (d)(1) (making any violation of advertising prohibitions a crime punishable by up to four years' imprisonment).

Given that dispensing, distributing, and possessing cannabis is a crime under federal law, Plaintiffs' proposed commercial speech does not concern "lawful activity," and is therefore not protected by the First Amendment. Plaintiffs may argue that medical cannabis advertising concerns lawful activity in Mississippi because the State has legalized medical cannabis. However, the Controlled Substances Act prevails over state law by virtue of the Supremacy Clause. *See* U.S. Const. art. VI, cl. 2. Any activity that is prohibited by federal law is necessarily unlawful, irrespective of its legality under state law. Indeed, state law provides no defense to a person who violates federal law by selling, using, or possessing a controlled substance. *See Gonzales v. Raich*, 545 U.S. 1, 29 (2005). Moreover, Plaintiffs have filed suit in federal court and are seeking relief

7

exclusively under federal law. *See* Doc. 1 at 3, ¶ 7 (noting that they "bring this civil rights lawsuit pursuant to the First and Fourteenth Amendments . . . [and] 42 U.S.C. § 1983). It logically follows that federal law controls whether Plaintiffs' proposed commercial speech concerns lawful activity. It plainly does not concern lawful activity or a legal product under federal law.[2]

In *Montana Cannabis Industry Association v. State of Montana*, 368 P.3d 1131 (Mont. 2016), the Montana Supreme Court rejected a First Amendment challenge to a state law prohibiting advertising by medical marijuana providers, holding that such advertising does not concern lawful activity and is thus not entitled to constitutional protection. *Id.* at 1148-50. The court reasoned that, "[b]ecause federal law governs the analysis of this issue, we conclude that an activity that is not permitted by federal law—even if permitted by state law—is not a 'lawful activity' within the meaning of *Central Hudson's* first factor." *Id.* at 1150. The Montana Supreme Court's *Central Hudson* analysis is sound and persuasive. Activities conducted in Montana or Mississippi, including the sale of medical cannabis, are subject to both state and federal law. For an activity to be considered "lawful," it must be permissible under both state and federal law. This Court simply cannot simply ignore the Controlled Substances Act when adjudicating a federal-law claim. It should, therefore, adopt the Montana Supreme Court's sound reasoning and conclude that medical cannabis advertising does not come within the protection of the First Amendment.

In sum, Plaintiffs are mistaken in asserting that they satisfy the first requirement of the *Central Hudson* test. Medical cannabis advertising does not concern lawful activity because it is illegal under federal law to sell, use, or possess cannabis. And federal law is controlling on this issue pursuant to the Supremacy Clause and based on the fact that Plaintiffs seek relief solely under

---

[2] *See* Alex Kreit, *What Will Federal Marijuana Reform Look Like?*, 65 Case W. Res. L. R. 689, 714 (2015) ("Federal prohibition does, however, allow for a complete ban on marijuana advertising because there is no First Amendment right to advertise the sale of an illegal good. Indeed, federal law actually makes it a crime to advertise marijuana or any other Schedule I drug.") (citing 21 U.S.C. § 843(c)).

federal law. For these reasons, Plaintiffs fail to state a valid First Amendment commercial speech claim, and this Court should grant Defendants' motion to dismiss under Rule 12(b)(6).

## II. ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT BECAUSE THIS COURT CANNOT USE ITS EQUITABLE POWERS TO FACILITATE CONDUCT THAT IS ILLEGAL UNDER FEDERAL LAW.

Plaintiffs seek equitable relief to prevent the State from enforcing its medical cannabis advertising and regulations against them or any other dispensaries. They seek that relief so that they may advertise their business to the general public and consequently sell more medical cannabis – conduct that Congress has expressly determined is illegal under federal law. Granting the requested equitable relief would violate the fundamental principle that courts will not utilize their equitable powers to facilitate unlawful conduct. This Court should accordingly find that it is precluded from granting relief to Plaintiffs and dismiss their complaint.

The Fifth Circuit has recognized that "[i]t is well settled that equity will not lend its aid to the perpetration of criminal acts." *Cartlidge v. Rainey*, 168 F.2d 841, 845 (5th Cir. 1948); *see United States v. Oakland Cannabis Buyers' Co-op*, 532 U.S. 483, 497 (2001) ("[A] court sitting in equity cannot ignore the judgment of Congress, deliberately expressed in legislation.") (cleaned up); *Warner Bros. Theatres, Inc. v. Cooper Found.*, 189 F.2d 825, 829 (10th Cir. 1951) (holding that "[a] court of equity should not permit" a party to "take advantage of an admittedly illegal arrangement"). As a result, federal courts have generally refused to grant equitable relief in cases involving state-legal, cannabis operators because doing so would facilitate the violation of federal law.

For example, in *Original Invs., LLC v. State*, 542 F. Supp. 3d 1230 (W.D. Okla. 2021), the plaintiff sought declaratory and injunctive relief prohibiting the enforcement of the residency requirements in Oklahoma's medical marijuana statute, so that it could obtain a medical marijuana

9

business license. *Id.* at 1231-32. The district court held that Oklahoma's illegality defense was dispositive and dismissed the case with prejudice. *Id.* at 1233-37. In so holding, the court relied on the "well-settled" principle "that 'a court won't use its equitable power to facilitate illegal conduct.'" *Id.* at 1233 (quoting *Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kansas City*, 861 F.3d 1052, 1055 (10th Cir. 2017) (Mortiz, J., non-precedential opinion) (concluding that credit union could not sue for an injunction requiring Federal Reserve Bank to allow it to provide banking services to state-legal marijuana operators because granting such relief would facilitate activity expressly prohibited by federal law)). Because the plaintiff sought "relief in order to engage in activities that Congress has expressly declared to be criminal under federal law," the court concluded that it would "'not lend its aid to the perpetration of criminal acts.'" *Id.* at 1235 (quoting *Cartlidge*, 168 F.2d at 845).

Similarly, a Colorado bankruptcy court dismissed a bankruptcy case filed by debtors that sold equipment and supplies for use in growing cannabis. *In re Way To Grow, Inc.*, 597 B.R. 111, 133 (Bankr. D. Colo. 2018), *aff'd sub nom. In re Way to Grow, Inc.*, 610 B.R. 338 (D. Colo. 2019). The court determined that it could not "enforce federal law in aid of the Debtors because Debtors' ordinary course activities constitute a continuing federal crime." *In re Way To Grow, Inc.*, 597 B.R. at 131-32. Other federal courts have dismissed cases involving state-legal cannabis operators on the ground that they were precluded from granting relief in violation of the Controlled Substances Act. *See Shulman v. Kaplan*, No. 2020 WL 7094063, at *2 (C.D. Cal. Oct. 29, 2020) (dismissing RICO lawsuit that sought "lost profits from the sale, production, and distribution of cannabis" because "any potential remedy in this case would contravene federal law under the CSA"); *Polk v. Gontmakher*, 2019 WL 4058970, at *2 (W.D. Wash. Aug. 28, 2019) (dismissing breach-of-contract action based on the fact that "awarding [plaintiff] an ownership interest in, or

profits from" business that produces marijuana would "contravene[] federal law"); *see also Sensoria, LLC v. Kaweske*, 581 F.Supp.3d 1243, 1260-62 (D. Colo. Jan. 24, 2022) (dismissing multiple causes of action that sought an award of "equity in or . . . profits from a business that grows, processes, and sells marijuana"); *cf. Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d 877, 888-89 (N.D. Cal. 2019) (holding that maker of cannabis-infused edibles could not assert prior use as a defense to federal trademark infringement claim because of the "illegality" of its "products under federal law").

Here, Plaintiffs seek an injunction prohibiting Defendants from enforcing the advertising and marketing regulations promulgated by MDOH against them and other licensed dispensaries. Doc. 1 at 27. They request this relief so that they may advertise Tru Source's cannabis products to the general public and, as a result, sell more cannabis. *See* Doc. 1 at 16-21. As discussed above, selling and advertising cannabis is illegal under the Controlled Substances Act. It is indisputable that granting the relief sought by Plaintiffs would therefore facilitate activity that violates federal criminal law. Under settled law, this Court cannot ignore the judgment of Congress and provide such relief to Plaintiffs. Because the Court lacks the ability to provide any relief, it should dismiss this case.

## CONCLUSION

For the reasons set forth herein, the Court should grant the Defendants' Motion to Dismiss and dismiss this case with prejudice.

THIS the 20th day of December, 2023.

    Respectfully submitted,

    CHRISTOPHER GRAHAM, in his official capacity as Commissioner of the Mississippi Department of Revenue; RILEY NELSON, in his official capacity as Chief of Enforcement of the Mississippi Alcohol

                Beverage Control Bureau; and DR. DANIEL EDNEY, in his official capacity State Health Officer for the Mississippi State Department of Health, DEFENDANTS

                By:  LYNN FITCH, ATTORNEY GENERAL FOR THE STATE OF MISSISSIPPI

                By:  <u>s/Wilson D. Minor</u>
                    WILSON D. MINOR (MSB #102663)
                    Special Assistant Attorney General

WILSON D. MINOR (MSB #102663)
GERALD L. KUCIA (MSB #8716)
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi 39205-0220
Tel.: (601) 359-6279
Fax: (601) 359-2003
wilson.minor@ago.ms.gov
gerald.kucia@ago.ms.gov

## **CERTIFICATE OF SERVICE**

  I, Wilson D. Minor, Special Assistant Attorney General and one of the attorneys for the above-named defendants, do hereby certify that I have this date caused to be filed with the Clerk of the Court a true and correct copy of the above and foregoing via the Court's ECF filing system, which sent notification of such filing to all counsel of record.

  THIS the 20th day of December, 2023.

                    <u>s/Wilson D. Minor</u>
                    WILSON D. MINOR