IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**CLARENCE COCROFT and TRU SOURCE**
**MEDICAL CANNABIS, LLC**                                                                                    **PLAINTIFFS**

**VS.**                                                                            **CAUSE NO.:3:23CV431-MPM-RP**

**CHRIS GRAHAM, in his official capacity as**
**the Commissioner of the Mississippi**
**Department of Revenue, RILEY NELSON,**
**in his official capacity as Chief of**
**Enforcement of the Mississippi Alcoholic**
**Beverage Control Bureau and DR. DANIEL**
**P. EDNEY, in his official capacity as State**
**Health Officer for State of Mississippi**
**Department of Health**                                                                                     **DEFENDANTS**

**ORDER**

This cause comes before the court on the motion of defendants Mississippi Department of Revenue ("MDOR") Commissioner Christopher Graham, Chief of Enforcement of MDOR's Alcohol Beverage Control Bureau of Enforcement Riley Nelson, and the State Health Officer for the Mississippi Department of Health ("MDOH") Dr. Daniel Edney, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss this action filed against them in their official capacities. Plaintiffs Tru Source Medical Cannabis, LLC ("Tru Source") and its owner Clarence Cocroft have responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, is prepared to rule.

This is a First Amendment action arising from what the plaintiffs allege to be violations of their free speech rights by state laws and regulations which, while legalizing medical marijuana in Mississippi, prevent them from advertising on behalf of their medical cannabis dispensary. The plaintiffs are precluded by Eleventh Amendment immunity from seeking

1

monetary damages against the State of Mississippi in federal court, and they have accordingly limited their requested relief to declaratory and injunctive relief against state officers based on alleged violations of federal law, as authorized by *Ex parte Young*, 209 U.S. 123 (1908).

In their complaint, plaintiffs assert that, were it not for the State's restrictions on medical cannabis advertising, they would engage in a variety of advertisements for their business, including billboards, "print advertising" and "broadcast advertising, including television and radio." [Complaint at 22]. Plaintiffs further allege that, in the absence of the right to engage in such advertising like other businesses, they are severely hampered in their ability to grow and profit from their enterprise. [*Id.*] In their complaint, plaintiffs seek a declaratory judgment that, "facially and as applied to" them and "all those similarly situated," the "ban violates the First Amendment." [*Id.* at 27]. Plaintiffs also request that this Court issue a permanent injunction prohibiting the enforcement of the advertising ban by defendants and their agents. *Id.*

## Legislative and Regulatory History

Before addressing plaintiffs' constitutional arguments and requests for relief, this court will briefly review the recent legislative enactments which have given rise to this lawsuit. In 2022, the Mississippi Legislature passed the Mississippi Medical Cannabis Act (the "Act"), which authorized the production, sale, and use of cannabis for medicinal purposes. *See* Miss. Code Ann. § 41-137-1, *et seq*. In so doing, the Legislature granted the Mississippi Department of Health ("MDOH") the "ultimate authority for oversight of the administration of the medical cannabis program," including the authority to, among other things, license and regulate facilities and entities responsible for growing, processing, transporting, testing, and disposing of medical cannabis. Miss. Code Ann. § 41-137-7(1), (3)(a)-(b); Miss. Code Ann. § 41-137-35(1). The Act assigned another state agency, the Mississippi Department of Revenue ("MDOR"), the duty of

"licensing, inspection and oversight of medical cannabis dispensaries." Miss. Code Ann. § 41-137-7(4); Miss. Code Ann. § 41-137-35(1). The Act requires both MDOH and MDOR to promulgate certain rules and regulations "where relevant to the role" of each agency in administering the medical cannabis program. Miss. Code Ann. § 41-137-41(1).

Of particular relevance to this case, the Act specifically mandates the issuance of rules and regulations which provide "[r]estrictions on the advertising, signage, and display of medical cannabis[.]" Miss. Code Ann. § 41-137-41(1)(d)(x). But the Act does not bar all forms of marketing and branding. To the contrary, the rules and regulations adopted under the statute "may not prevent appropriate signs on the property of a dispensary, listings in business directories, including phone books, [or] listings in cannabis-related or medical publications[.]" *Id.* Nor may the regulations prohibit medical cannabis dispensaries (and other licensed entities) from displaying cannabis in their "company logos and other branding activities," operating a website with pictures of the products they sell, or sponsoring "health or not-for-profit charity or advocacy events[.]" *Id.*

In exercising the authority granted to it by the Legislature, MDOH has adopted regulations governing the advertising and marketing of medical cannabis. *See* 15 Miss. Admin. Code Pt. 22, Subpt. 3, R. 3.1.1, *et seq*. These regulations prohibit all medical cannabis licensees, including dispensaries, from "advertising and marketing in any media[.]" 15 Miss. Admin. Code Pt. 22, Subpt. 3, R. 3.2.1. This prohibition applies to all forms of broadcast, electronic, and print media. *Id.* It also applies to "[m]ass text/messaging communications," "[m]ass email communications," and advertising "in any manner that can be viewable . . . [in] a public space[.]" *Id.* Finally, MDOH's advertising and marketing regulations bar licensees from

3

displaying their products in windows or places open to public view, as well as soliciting reviews, testimonies, or endorsements from patients, caregivers, and healthcare practitioners. *Id.* However, the regulations do permit dispensaries and other licensees to "participate in branding activities . . . in order to publicize their businesses[.]" 15 Miss. Admin. Code Pt. 22, Subpt. 3, R. 3.3.1. More specifically, dispensaries are allowed to create "a website and/or social media presence that provides" their "contact information, retail dispensing locations, and a list of products available"; to be listed in phone books and "cannabis-related or medical publications"; and to sponsor "health or not-for-profit charity or advocacy events." 15 Miss. Admin. Code Pt. 22, Subpt. 3, R. 3.3.2.

## Analysis

Having discussed the nature of the statutes and regulations at issue in this case, this court will now address plaintiffs' arguments that they infringe upon their First Amendment rights. In doing so, this court notes at the outset that, while the parties strongly disagree regarding the proper interpretation of the law in this context, they do appear to agree that this case turns upon the proper interpretation and application of the U.S. Supreme Court's decision in *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,* 447 U.S. 557, 100 S. Ct. 2343 (1980). In *Central Hudson*, the Supreme Court established a four-part test for assessing the constitutionality of limitations upon commercial speech, as follows:

> In commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Central Hudson,* 447 U.S. at 566.

The parties further appear to agree that *Central Hudson*'s applicability to this case turns upon the proper interpretation of its initial requirement that the speech in question "concern lawful activity." *Id.* In seeking dismissal of this case, the State argues that, since the possession of marijuana remains illegal under federal law, it does not constitute "lawful activity" in Mississippi and that the State was accordingly within its rights in greatly limiting cannabis advertising. Specifically, the State argues that:

> The proposed medical cannabis advertising Plaintiffs intend to undertake does not concern a lawful activity. Cannabis (i.e., marijuana) is classified as a Schedule I controlled substance. 21 U.S.C. §§ 802(6), 812 (Schedule I)(c)(10). Under the Controlled Substances Act, it is a crime to manufacture, distribute, dispense, or possess any controlled substance, including cannabis. 21 U.S.C. §§ 841(a)(1), 844(a). Moreover, the Controlled Substances Act criminalizes the advertising of cannabis or any other Schedule I drug. 21 U.S.C.A. § 843(c)(1) (prohibiting advertising that "attempt[s] to propose or facilitate an actual transaction in a Schedule I controlled substance"); *see id.* at (c)(2)(A) (prohibiting internet advertising) & (d)(1) (making any violation of advertising prohibitions a crime punishable by up to four years' imprisonment).
> Given that dispensing, distributing, and possessing cannabis is a crime under federal law, Plaintiffs' proposed commercial speech does not concern "lawful activity," and is therefore not protected by the First Amendment.

[Brief at 7]. In its brief, the State insists that its decision to legalize medical cannabis under state law does not alter its illegality under federal law, writing that:

> Plaintiffs may argue that medical cannabis advertising concerns lawful activity in Mississippi because the State has legalized medical cannabis. However, the Controlled Substances Act prevails over state law by virtue of the Supremacy Clause. See U.S. Const. art. VI, cl. 2. Any activity that is prohibited by federal law is necessarily unlawful, irrespective of its legality under state law. Indeed, state law provides no defense to a person who violates federal law by selling, using, or possessing a controlled substance. *See Gonzales v. Raich*, 545 U.S. 1, 29 (2005). Moreover, Plaintiffs have filed suit in federal court and are seeking relief exclusively under federal law. *See* Doc. 1 at 3, ¶ 7 (noting that they "bring this civil rights lawsuit pursuant to the First and Fourteenth Amendments . . . [and] 42 U.S.C. § 1983). It logically follows that federal law controls whether Plaintiffs' proposed commercial speech concerns lawful activity. It plainly does not concern lawful activity or a legal product under federal law.

[Brief at 8].

This court agrees with the State's argument in this regard, and, in so doing, it finds particularly persuasive the primary authority upon which it relies in seeking dismissal of this case. In its 2016 decision in *Montana Cannabis Industry Association v. State of Montana*, 368 P.3d 1131 (Mont. 2016), the Montana Supreme Court rejected a First Amendment challenge to a state law prohibiting advertising by medical marijuana providers, holding that such advertising does not concern "lawful activity" and is thus not entitled to First Amendment protection. *Id.* at 1148-50. Specifically, the Montana Supreme Court held that, "[b]ecause federal law governs the analysis of this issue, we conclude that an activity that is not permitted by federal law—even if permitted by state law—is not a 'lawful activity' within the meaning of *Central Hudson*'s first factor." *Id.* at 1150.

This court does not believe that the Montana Supreme Court's rationale is difficult to understand or explain, since it is very difficult to argue that something which remains illegal under the supreme law of the land constitutes "lawful activity." In arguing otherwise, plaintiffs write in their brief that:

> But all of this—literally all of it—say Defendants, is illegal under federal law. See Defs.'Mem. 6–9. This, even as the federal government has all but fully disavowed its own supposed prohibition. Indeed, the federal government has declared—first in 2014 and every year since—that it would not expend any funds prosecuting state-legal medical marijuana operations. *See* Compl. ¶ 13 (*citing United States v. McIntosh*, 833 F.3d 1163, 1175–77 (9th Cir. 2016) (discussing the Rohrabacher-Farr Amendment)). And just recently, President Biden issued blanket pardons for small-time marijuana possession or marijuana use. It is in this context that the state of Mississippi asserts its authority to regulate speech—that is, solely in reliance on a federal law that Congress has said it will not enforce against Plaintiffs and on the heels of blanket pardon absolving all of its customers.

[Brief at 2-3].

Plaintiffs thus argue that Congress and President Biden have "all but" made the possession of marijuana lawful, which strikes this court as a tacit admission that it still remains

6

illegal under federal law. Plaintiffs' citation to the Rohrabacher-Farr Amendment does not alter this fact. A recent law journal article dealing with this Amendment describes it as follows:

> Since 2015, however, Congress has included a provision in their annual Consolidated Appropriations Acts providing that "[n]one of the funds made available under this Act to the Department of Justice may be used" to prevent any state who has legalized medical marijuana "from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana." The provision, commonly referred to as the Rohrabacher-Farr Amendment because of its sponsors, has listed a growing number of states each year as states continue to legalize medical marijuana. The most recently enacted version of the amendment includes all but three states. Courts are split on whether "strict compliance" or "substantial compliance" with state law provisions is necessary to trigger the amendment's ban on the use of federal funds to prosecute.

Tess A. Chaffee, We(Ed) the People: How A Broader Interpretation of the Rohrabacher-Farr Amendment Effectuates the Changing Social Policy Surrounding Medical Marijuana, 91 U. Cin. L. Rev. 856, 857 (2023).

The Chaffee article thus notes that federal appellate courts have differed in their interpretation of the legal effect of the Rohrabacher-Farr Amendment on marijuana prosecutions, but this court does not regard these differences as of significance in this case. This is because, even under its most expansive interpretation, the Rohrabacher-Farr Amendment concerns the budgetary priority which Congress chose to assign to marijuana prosecutions, and it does not constitute an attempt to make marijuana legal under federal law. Stated differently, the Amendment reflects a Congressional determination, in allocating limited budgetary funds over the past several years, that providing money to the Justice Department to prosecute marijuana users in states where it is legal cannot be justified.

While this court is aware of no reason to suspect that this Congressional determination will change anytime soon, it is clearly not the same thing as making marijuana legal under federal law. Indeed, while Chaffee is clearly among those who support an expansive interpretation of the Rohrabacher-Farr Amendment, she notes herself that recent Congressional

efforts to legalize cannabis at the federal level have failed. Specifically, Chaffee writes in her article that:

> Today, marijuana remains classified as a Schedule I drug despite research and numerous studies indicating that marijuana holds significant pain- and symptom-relieving properties. . . . [However,] there have been repeated efforts to reschedule marijuana under the CSA. Most recently, the Marijuana Opportunity Reinvestment and Expungement Act, which was passed by the House of Representatives in April 2022, would remove marijuana from the list of scheduled substances under the CSA and eliminate federal criminal penalties for those engaged in the manufacture, distribution, or possession of marijuana. Similarly, the Cannabis Administration and Opportunity Act, introduced in the Senate in July 2022, would "decriminalize and deschedule cannabis ... provide for reinvestment in certain persons adversely impacted by the War on Drugs, and ... provide for expungement of certain cannabis offenses."

Chaffee, U. Cin. L. Rev. at 863–64 (citation omitted).

Thus, even strong supporters of the legalization of marijuana have acknowledged the simple reality that, at least to date, all efforts to legalize marijuana at the federal level have failed in Congress. That being the case, marijuana remains illegal under the supreme law of this land, and plaintiffs' citations to the Rohrabacher-Farr Amendment or to pardons issued by President Biden do not alter this fact. This court therefore fully agrees with the Montana Supreme Court's conclusion in *Montana Cannabis* that "an activity that is not permitted by federal law—even if permitted by state law—is not a 'lawful activity' within the meaning of *Central Hudson*'s first factor." *Id.*

In their brief, plaintiffs openly acknowledge that *Montana Cannabis* constitutes adverse authority for their position in this case, and they argue that this court should be guided instead by a 2022 decision in which a Washington appellate court found that marijuana advertising met the *Central Hudson* "lawful activity" standard. *See Seattle Events v. State*, 22 Wash. App. 2d 640, 656, 512 P.3d 926, 935 (2022). Plaintiffs argue that *Seattle Events*'s rationale is more persuasive than that set forth in *Montana Cannabis*, but, in so arguing, they ignore the fact that the

Washington court itself distinguished that case from the Montana holding on the following grounds:

> In *Montana Cannabis*, the plaintiffs "rel[ied] exclusively on federal law in their argument on this issue" and did not bring a claim under the free speech provision of the Montana Constitution. The sale of marijuana remains illegal under federal law. 21 U.S.C. §§ 812(c) sched. I(c)(10), 841. In addition to a challenge under the federal constitution, Seattle Events brought claims under the state constitution, which invokes state law. Therefore, this case is distinguishable from *Montana Cannabis*, where the appellants relied solely on the protections of the United States Constitution and invoked only federal law.

*Seattle Events*, 22 Wash. App. 2d at 656. The *Seattle Events* court thus found *Montana Cannabis* distinguishable because the plaintiffs in that case sought relief solely under the U.S. Constitution, while the plaintiffs in the case before it sought recovery under the Washington Constitution's free speech provisions as well. *Id.* Without question, this case is far more analogous to *Montana Cannabis* in this regard, since the plaintiffs here seek recovery solely under federal law.

Aside from the fact that the Washington Court of Appeals itself regarded cases (such as this one) which rely solely upon the U.S. Constitution as distinguishable, this court finds the basic analysis of the Montana Supreme Court in *Montana Cannabis* to be sounder on its merits. In so stating, this court notes its belief that, while the Washington court did cite two federal appellate decisions as persuasive authority for its conclusion that marijuana use constitutes "lawful activity" under *Central Hudson*, these decisions are fully distinguishable from this case. In particular, the *Seattle Events* court relied upon what it acknowledged to be "dicta" in the 1982 First Circuit decision of *New England Accessories Trade Ass'n, v. City of Nashua*, 679 F.2d 1 (1st Cir. 1982) as well as certain language in the Ninth Circuit's decision in *Washington Mercantile Ass'n v. Williams*, 733 F.2d 687, 691 (9th Cir. 1984).

This court has reviewed the federal appellate opinions in *Nashua* and *Williams*, and it seems clear that each involved nothing more than those courts' observations, in cases which bear little factual resemblance to this one, regarding the impact of the U.S. Supreme Court's decision in *Bigelow v. Virginia*, 421 U.S. 809, 825, 95 S. Ct. 2222, 2234 (1975). The plaintiffs in this case rely heavily upon *Bigelow* as well, writing in their brief that:

> [A]s the Supreme Court has made clear, the First Amendment analysis focuses on whether a transaction is legal under the laws of the state where it is proposed, not whether it is illegal under the laws of another jurisdiction. *Bigelow v. Virginia*, 421 U.S. 809 (1975) (striking down a ban on abortion-related advertisements in Virginia, as applied to a plaintiff advertising abortion services in New York, where abortion was legal).

[Brief at 5].

In the court's view, there is a central logical and factual weakness in plaintiffs' argument quoted above, and it demonstrates, perhaps more than anything else, the central weakness of their position in this case. By relying so heavily on *Bigelow*, plaintiffs invoke a U.S. Supreme Court decision which involved the laws and rights existing between two states, New York and Virginia, and they seek to apply that decision to the relationship between Mississippi and the United States, as if they were the same thing. Clearly, they are not. As noted in plaintiffs' description above, the Supreme Court in *Bigelow* struck down a ban on abortion-related advertisements in Virginia, as applied to a plaintiff who advertised abortion services in New York, where abortion was legal. *Bigelow*, 421 U.S. at 825. In so doing, the Supreme Court wrote that:

> A State does not acquire power or supervision over the internal affairs of another State merely because the welfare and health of its own citizens may be affected when they travel to that State. It may seek to disseminate information so as to enable its citizens to make better informed decisions when they leave. But it may not, under the guise of exercising internal police powers, bar a citizen of another State from disseminating information about an activity that is legal in that State.

*Id.* at 824-25.

It is thus plain that, in *Bigelow*, the U.S. Supreme Court was considering the relative rights of two constitutional equals, namely the states of New York and Virginia. In their brief, plaintiffs appear to argue that this court can simply substitute "Mississippi" and "the United States" for "New York" and "Virginia" and, having done so, apply *Bigelow*'s holding to this case. In so arguing, plaintiffs ignore the fact that, as two co-equal states, New York and Virginia have a completely different legal and constitutional relationship to each other than Mississippi has to the United States, as the national sovereign. It seems clear that, when it comes to conflicting laws, the federal government is the "rock" to Mississippi's "scissors," which renders *Bigelow*'s observations regarding the rights and duties between co-equal states completely inapplicable in this case. As quoted above, plaintiffs cite *Bigelow* for the proposition that "the First Amendment analysis focuses on whether a transaction is legal under the laws of the state where it is proposed, not whether it is illegal under the laws of another jurisdiction." [Brief at 5]. In this case, the only marijuana laws at issue are those of Mississippi and the United States, and, that being the case, plaintiffs' reference to the "laws of another jurisdiction" can only be understood to refer to federal law.

In the court's view, the fact that plaintiffs refer to the law of the United States as "the laws of another jurisdiction" plainly illustrates the incorrectness of their legal arguments in this case. Without question, federal law is not the "law of another jurisdiction;" it is *the* supreme law in Mississippi, New York, Virginia, and every other state as well. As noted by the U.S. Supreme Court:

> Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect. From the existence of two sovereigns follows the possibility that laws can be in conflict or at cross-purposes. The Supremacy Clause provides a clear rule that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary

notwithstanding." Art. VI, cl. 2. Under this principle, Congress has the power to preempt state law.

*Arizona v. United States*, 567 U.S. 387, 398–99, 132 S. Ct. 2492, 2500 (2012)(citations omitted).

*Bigelow* did not deal with the unique status of federal law as the supreme law of the land,[1] and it seems clear that, in citing that decision, the federal appellate courts in *Nashua* and *Williams* did not do so either. Indeed, none of these three federal appellate decisions involved the situation present here, where federal law specifically makes a particular activity illegal which is legal under state law. That being the case, the federal government's unquestioned power under the Supremacy Clause simply did not come into the picture in *Bigelow*, *Nashua* and *Williams*, and any discussion of the relative legality of particular activities in those cases was clearly made in the context of the laws of different states.

In the court's view, the closest either decision came to suggesting otherwise was the First Circuit's statement in dicta in *Nashua* that:

> If New York, or some other state, decided to legalize the sale and use of marijuana, New Hampshire would have greater difficulty under *Bigelow* prohibiting an advertisement suggesting that the Big Apple was the place to get high on marijuana. But that is not the situation before us.

*Nashua*, 679 F.2d at 4. It appears to this court that, in seeking to make a particular point in dicta, the First Circuit in *Nashua* may have chosen a poor hypothetical, apparently overlooking the fact that marijuana is illegal under federal law. In so stating, this court notes that the existence and impact of the Supremacy Clause is hardly a controversial point, as the First Circuit itself has fully acknowledged. *See Maine Forest Prod. Council v. Cormier*, 51 F.4th 1, 6 (1st Cir. 2022).

---

[1] In so stating, this court notes that the events which gave rise to the *Bigelow* litigation occurred in 1971, *see Bigelow*, 421 U.S. at 811, which was before the U.S. Supreme Court legalized abortion at the federal level in *Roe v. Wade*, 410 U.S. 113, 165, 93 S. Ct. 705, 732 (1973).

This court believes that, if the First Circuit had at least *mentioned* the existence of federal laws criminalizing marijuana in its hypothetical, then it might carry at least some weight as persuasive authority in this context. As it stands, however, it appears that the First Circuit was not even thinking of the existence of federal marijuana laws in crafting its hypothetical; if it was, then it certainly did not give any indication of such in the language it used. That being the case, this court believes that to utilize this hypothetical as a basis for ignoring the clear language of the Supremacy Clause would be very difficult to justify. That aside, the hypothetical which the First Circuit posited, namely a New Hampshire "advertisement suggesting that the Big Apple was the place to get high on marijuana" bears no resemblance to any of the potential advertising which is at issue in this case and involves one state "stepping on the toes" of another in such a manner as to arguably raise concerns under *Bigelow*. No prospective advertising of a remotely comparable nature is at issue in this case

This court therefore regards this particular sentence in *Nashua* as little more than judicial hypothesizing in dicta regarding an issue not before that court. There are good reasons why such dicta carry no precedential weight, since courts in general tend to be less precise and careful in making statements in dicta regarding issues which are not before them. The Washington appellate court in *Seattle Events* openly acknowledged that the hypothetical in *Nashua* was dicta, *id.* at 654, and the language of the hypothetical suggests that the First Circuit was simply trying to give an example of conflicting state laws without even considering the existence or impact of federal laws which make marijuana illegal. The Ninth Circuit's decision in *Williams* similarly strikes this court as clearly dealing with conflicting laws of different states, and not conflicting state and federal law. Indeed, in finding *Williams* persuasive, the Washington Court of Appeals cited the Ninth Circuit's statement that:

> Sale or delivery of drug paraphernalia is illegal in Washington, so advertisements for sales in or mail orders from Washington are unprotected speech. In contrast, the advertiser who proposes a transaction in a state where the transaction is legal is promoting a legal activity. Its speech deserves First Amendment protection.

*Seattle Events*, 22 Wash. App. at 655, citing *Williams*, 733 F.2d at 691. This court has no disagreement with this language chosen by the Ninth Circuit, but it clearly involves the conflicting laws of two different *states* and says nothing about the situation in this case, namely conflicting state and federal law.

This court therefore believes that the Washington appellate court in *Seattle Events* made a poor choice in citing these two federal appellate decisions as supporting a conclusion that something which is unlawful under federal law may be properly considered "lawful activity" in any state. The basic language of the Supremacy Clause, quoted above, makes it clear that this proposition is an untenable one, since whatever is unlawful under federal law is necessarily unlawful in every state. This is true even if the federal government has made a policy decision not to actively enforce a particular federal law, since basic legality and prosecutorial discretion are two different things. As discussed previously, efforts have recently been made in Congress to make marijuana legal under federal law, but those efforts have failed. This court therefore concludes that the Montana Supreme Court correctly held in *Montana Cannabis* that, inasmuch as marijuana remains illegal under federal law today, it cannot be considered "lawful activity" within the meaning of *Central Hudson*. This court therefore agrees with defendants that plaintiffs' complaint in this case fails to assert a proper First Amendment claim and must be dismissed.

### Further Concerns About Exercising Federal Injunctive Power In This Case

While this court's conclusion that marijuana usage is not "lawful activity" is, standing alone, sufficient reason to dismiss this action, it notes for the record that it would have serious

federalism concerns about exercising its injunctive authority in the manner urged by plaintiffs, even if First Amendment principles arguably allowed it to do so. In so stating, this court emphasizes that, when a district court utilizes its injunctive power to order state officials to take actions which are contrary to their own state's laws, it is engaging in a very powerful exercise of federal judicial authority, which counsels caution and discretion in the exercise of that power. This court believes that caution is particularly warranted here, considering the extraordinarily powerful impact of any order permitting plaintiffs, and others like them, to fill the airwaves in Mississippi with cannabis advertisements of the sort which the Mississippi Legislature specifically disapproved of in promulgating the Act. Thus, while this court regards the federalism principles and precedent which apply in this context as being less clear than the rather straight-forward analysis applicable to the *Central Hudson* issues, it believes that they are too important not to at least mention in this order.

In introducing the Supreme Court precedent which applies in this context, this court notes that it is no great mystery why the plaintiffs in this case sought recovery exclusively under federal law, even though the plaintiffs in the *Seattle Events* also sought recovery under state law. The reason is that, in light of U.S. Supreme Court precedent, they had no choice in the matter, at least if they wanted to proceed in federal, rather than state, court. Indeed, while the Mississippi Constitution does include a freedom of speech provision, *see* Mississippi Constitution Article 3, Section 13, this court lacks authority under U.S. Supreme Court precedent to order state officers to take any actions to comply with it. This is because, in the 1984 decision of *Pennhurst State Sch. & Hosp. v. Halderman*, the U.S. Supreme Court made it clear that the Eleventh Amendment immunity enjoyed by the states prevents a federal court from ordering *Ex parte Young*-style

injunctive relief against state officers on the basis of state, rather than federal, law. *Id.,* 465 U.S. 89, 104 S. Ct. 900 (1984).

In concluding that federal courts were barred from ordering such relief, the Supreme Court in *Pennhurst* made certain observations, emanating from federalism concerns, regarding the limitations of federal judicial power *vis a vis* the states. In particular, the Supreme Court in *Pennhurst* wrote that:

> The Court also has recognized, however, that the need to promote the supremacy of federal law must be accommodated to the constitutional immunity of the States. . . . This need to reconcile competing interests is wholly absent, however, when a plaintiff alleges that a state official has violated *state* law. In such a case the entire basis for the doctrine of *Young* and *Edelman* disappears. A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. We conclude that *Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law.

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. at 105–06.

This court believes that *Pennhurst*'s admonition against federal courts making unwarranted "intrusion[s] on state sovereignty" casts a lengthy shadow over the recovery plaintiffs seek in this case. In so stating, this court notes that plaintiffs would have this court order the State of Mississippi, through its officers, to do something which strongly infringes upon its Legislature's policy evaluations regarding the circumstances in which it was willing to make a very cautious entry into the legalization of marijuana in this state. Legalizing marijuana was, of course, not something that Mississippi was required to do at all, and it is not at all clear to this court that it would have chosen to do so if it had known that, soon afterwards, a federal judge would order it to permit a form of advertising of which it so clearly disapproves. Indeed, this court can discern very rational reasons why a Legislature which was willing to allow sick

16

individuals to use cannabis in the privacy of their own homes would nevertheless have recoiled from having the airwaves and public billboards filled with marijuana advertisements which would inevitably be seen by children and other vulnerable citizens.

As noted previously, plaintiffs candidly admit in their complaint that, if they were to prevail in this lawsuit, they would advertise their cannabis business through, among other things, "billboards" and "broadcast advertising, including television and radio." [Complaint at 22]. This is a result which the Mississippi Legislature was clearly eager to avoid, inasmuch as it specifically forbade it from occurring. This court submits that not all intrusions upon state sovereignty are the same, and, if it were considering a request for injunctive relief which merely impacted the rights of one or a small number of individuals, then it would not regard the federalism concerns as being as pressing as they are in this case. As it stands, however, the plaintiffs would have this court make an extraordinarily powerful exercise of federal judicial authority which, if implemented, would effectively prevent the Mississippi Legislature from exercising its best judgment regarding how to provide for the health and safety of its citizens.

This court can discern no federal interest which would justify the drastic intrusion upon state sovereignty urged by the plaintiffs in this case. This is particularly true considering the fact that, by legalizing marijuana to any degree, the Mississippi Legislature has gone further than Congress itself has been willing to go. In light of this fact, on what basis would a federal court tell the Mississippi Legislature that it was not entitled to dip its toe into the legalization of marijuana, but, instead, had to dive headfirst into it? The intrusion upon state sovereignty urged by plaintiffs in this case would serve to fundamentally change the nature of the careful legislation which the Mississippi Legislature thought it was enacting, and it would do so in a manner which would have unpredictable societal impacts. Indeed, this court believes that the

Legislature could have reasonably feared that permitting cannabis merchants to fill the airwaves with advertisements would tend to "move the needle" towards greater societal acceptance of drug use in general. After all, if something is permitted to be openly advertised over the airwaves, would this not lead children and others to conclude that it is more or less harmless? It seems likely to this court that concerns of this nature were paramount in leading the Legislature to bar cannabis advertising in the first place, and this court is extremely reluctant to take any action to disturb the State of Mississippi's evaluation of how best to promote the safety and welfare of its citizens. Thus, while the *Central Hudson* issues in this case seem clear enough, this court regards federalism and simple judicial responsibility concerns as constituting an additional reason counseling against the relief sought by plaintiffs in this case.

Additional cause for hesitation arises from the Fifth Circuit's admonition that "[i]t is well settled that equity will not lend its aid to the perpetration of criminal acts." *Cartlidge v. Rainey*, 168 F.2d 841, 845 (5th Cir. 1948). In *Cartlidge*, the Fifth Circuit reversed a district court's award of an injunction which prevented Texas officials from seizing alcohol being transported in Texas, contrary to state law. *Cartlidge*, 168 F.2d at 844-45. In seeking a federal court injunction, the plaintiff argued that this seizure was unconstitutional as an undue burden on interstate commerce, *id.,* but the Fifth Circuit concluded that the district court should not have used its equitable power to facilitate acts which were criminal. Of course, *Cartlidge* was decided long ago and involved quite different facts from this case, and it is far from a foregone conclusion that the Fifth Circuit would find it applicable here. However, this court believes that defendants do have a reasonable argument that, by using its injunctive power to mandate that plaintiffs be allowed to advertise their cannabis products, it would be offering "aid in the perpetration of criminal acts" contrary to the Fifth Circuit's admonition against doing so. This

court regards *Cartlidge* as one additional reason not to grant the injunctive relief sought by plaintiffs in this case, even assuming that it does not, standing alone, constitute sufficient basis to decline to do so. At the end of the day, there are a myriad of reasons, discussed above, why this court does not believe that granting plaintiffs the relief they seek would be either lawful or judicially responsible, and defendants' motion to dismiss will accordingly be granted.

It is therefore ordered that defendants' motion to dismiss is granted.

A separate judgment will be entered this date, pursuant to Fed. R. Civ. P. 58.

This, the 22nd day of January, 2024.

/s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI